IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| WILLIAM RUSSELL BARGER, | ) | 4:04CV3268 |
| | ) | |
| Plaintiff, | ) | |
| | ) | **MEMORANDUM** |
| vs. | ) | **AND ORDER** |
| | ) | |
| MIKE JOHANNS, in his capacity as | ) | |
| Secretary of the United States | ) | |
| Department of Agriculture, | ) | |
| | ) | |
| Defendant. | ) | |

Attorney William Russell Barger (Plaintiff), appearing pro se, filed this action seeking judicial review of a final agency determination by the National Appeals Division (NAD) of the United States Department of Agriculture (USDA) that Plaintiff was not "actively engaged in farming" in 1999 when he received payments from the Commodity Credit Corporation (CCC) for certain USDA programs.  Plaintiff argues that the NAD determination should be set aside because (1) the NAD Director relied upon fact findings made by a USDA "review team" that has no statutory or regulatory authority; (2) the NAD Director reversed a hearing officer's contrary determination without first finding that the hearing officer's determination was not supported by substantial evidence; and (3) the NAD Director relied upon facts that are not contained in the administrative record and failed to follow USDA regulations for determining "commensurate share" contributions.[1]  Plaintiff also argues that he was denied due process and equal protection, and he seeks a declaration that in-kind

---

[1] Other reasons for setting aside the NAD determination are alleged by Plaintiff in his complaint but are not argued in his briefs.  They are deemed abandoned.  <u>See</u> NECivR 7.1.

payments (e.g., performance of legal services) for other persons' contributions of labor and equipment to the farming operation are allowed by the USDA regulations. The matter is now before the court on cross-motions for summary judgment.

## I. STATUTORY AND REGULATORY BACKGROUND

The terms and conditions for receiving payments from the CCC were implemented in the Federal Agriculture Improvement and Reform Act of 1996 (the 1996 Act). 7 U.S.C. § 7201 et seq. The 1996 Act provides a $40,000 limitation per fiscal year on payments made to a person under one or more production flexibility contracts, a $50,000 limitation on the total of adjustments made pursuant to Sections 113(c)(1) and 113(c)(2) of the 1996 Act and paid under one or more flexibility contracts, and a $75,000 limitation on the amount of marketing loan gains and loan deficiency payments a person may receive. Id. The 1996 Act applies the payment limitation and payment eligibility requirements and restrictions of the Food Security Act of 1985 to payments made under production flexibility contracts, marketing loan gains, and loan deficiency payments. Chapter 14 of Title 7 of the Code of Federal Regulations clarifies the existing policy and implements the payment limitation and eligibility requirements of the 1996 Act.

"To be considered a person who is eligible to receive payments with respect to a particular farming operation, a person must be an individual or entity actively engaged in farming with respect to such operation." 7 C.F.R. § 1400.201(a). "Actively engaged in farming" means that the individual or entity independently makes a significant contribution to a farming operation of:

> (1) Capital, equipment, or land, or a combination of capital, equipment, or land; and

> (2) Active personal labor or active personal management, or a combination of active personal labor and active personal management." [2]

7 C.F.R. § 1400.201(b).   Also, in order to be considered to be actively engaged in farming an individual or entity must have:

> (1) A share of the profits or losses from the farming operation commensurate with the individual's or entity's contribution to the operation; and

> (2) Contributions to the farming operation that are at risk.

7 C.F.R. § 1400.201(d).

A program participant who is subjected to payment limitation and payment eligibility review by the USDA may challenge an adverse agency decision through an administrative appeal to the NAD.[3]  The appeal is first handled by a hearing officer who conducts an evidentiary hearing at which the appellant "bear[s] the burden of proving that the adverse decision of the agency was erroneous."  7 U.S.C. § 6997(c)(4).  Either party may request that the hearing officer's determination be

---

[2] In determining if the individual or entity is actively contributing a significant amount of active personal labor or active personal management the following factors shall be taken into consideration:
> (1) The types of crops and livestock produced by the farming operation;
> (2) The normal and customary farming practices of the area; and
> (3) The total amount of labor and management necessary for such a farming operation in the area.

7 C.F.R. § 1400.201(c).

[3] The NAD is an adjudicative appeals process established in 1994 to provide factual review of adverse decisions of certain USDA agencies.  See 7 U.S.C. §§ 6991-6999 and NAD rules of procedure at 7 C.F.R. § 11.

reviewed by the NAD Director,[4] who must then "conduct a review . . . using the case record, the record from the evidentiary hearing . . ., the request for review, and such other arguments or information as may be accepted by the Director."  7 U.S.C. § 6998(b).  Based on such review, the NAD Director issues a final determination that upholds, reverses, or modifies the determination of the hearing officer, or else that remands all or a portion of the determination for further proceedings or for a new hearing.  See id.  Under 7 U.S.C. § 6999, a final determination of the NAD may be reviewed by a federal district court in accordance with the provisions of the Administrative Procedure Act (APA), 5 U.S.C. § 701 et seq.

## II.  FACTUAL AND PROCEDURAL BACKGROUND

A certified copy of the administrative record (filing 12, hereinafter referenced as "AR") was filed with the court when the USDA Secretary (Defendant) answered Plaintiff's complaint on November 18, 2004.  Defendant also filed a motion to set a briefing schedule for resolution of the case on cross-motions for summary judgment (filing 13), to which Plaintiff responded with a request that the briefing schedule allow sufficient time for Plaintiff to conduct discovery and, if necessary, to file a motion to compel (filing 15).

Treating Plaintiff's request as a motion for leave to conduct discovery, Magistrate Judge Piester denied the request for lack of a showing of exceptional need for discovery, an incomplete record, or bad faith.  I reversed Judge Piester's ruling on appeal, as having misconstrued the true nature of Plaintiff's filing, and I remanded for a new ruling of Plaintiff's request regarding the briefing schedule (filing 25).

---

[4] The NAD Director is appointed by the Secretary of Agriculture, and is "free from the direction and control of any person other than the Secretary."  7 U.S.C. § 6992(c).

On remand, Judge Piester granted Plaintiff time to file a motion for leave to conduct discovery (filing 26), which Plaintiff accomplished on April 4, 2005 (filing 28). Specifically, Plaintiff sought to depose and to subpoena documents from Steve Fries, a member of the Farm Service Agency county committee that had initially determined Plaintiff was not actively engaged in farming, and from the committee member's son, Travis Fries. Plaintiff sought to establish that the Frieses had also made "in-kind" trades of labor for equipment. Because Plaintiff had unsuccessfully sought to subpoena documents from the Frieses on administrative review, he also sought discovery from the NAD regarding its handling of subpoena requests for the past five years. Judge Piester, in a well-reasoned memorandum and opinion (filing 33), denied Plaintiff's motion, and I affirmed his ruling on appeal (filing 37). Judge Piester then established a schedule for the parties to file cross-motions for summary judgment and supporting, opposing, and reply briefs.

Attached to Plaintiff's motion for summary judgment (filing 41) are various exhibits that Defendant has moved to strike (filing 45). Defendant argues that the court previously ruled that its review would be limited to the administrative record, while Plaintiff argues that the court merely precluded discovery. For reasons that will be discussed later, I will grant the motion in part and deny it in part.

Both parties' briefs contain statements of material facts, with appropriate citations to the record, as required by our local rules. See NECivR 56.1(a). Neither party has disputed the other party's statement, except insofar as Defendant challenges Plaintiff's ability to file additional evidence. Consequently, each party's statement (excluding legal conclusions and facts not cited to the record) is deemed admitted. See NECivR 56.1(b) ("Properly referenced material facts in the movant's statement will be deemed admitted unless controverted by the opposing party's response.").

According to Defendant, the relevant facts are these:

5

1. Black Hawk Land and Cattle Co., (Black Hawk) is comprised of the following officers and/or shareholders: Jacob Barger (Plaintiff's brother), Clinton Barger (Plaintiff's brother), Katie Barger (Plaintiff's sister), Travis Barger (Plaintiff's brother), and William M. Barger and RanDee Barger (Plaintiff's parents). (AR 1076).

2. On May 10, 1995, Plaintiff signed Agency Form CCC-502A, Farm Operating Plan for Payment Eligibility Review for an Individual. This form establishes that on Farm Serial Number 1533, for 582.9 cropland acres, Plaintiff reported that (a) he leased 100% of his field equipment from Black Hawk, and (b) that he would provide 80% of active personal labor on the farm and the remaining 20% would be hired labor. These reported contributions remained unchanged through the 1999 crop year. (AR 596-602).

3. Plaintiff's 1999 Federal tax return establishes under Schedule F (RE: Profit or Loss From Farming), Part II, Farm Expenses at Line 24, that Plaintiff had $0.00 in hired labor. (AR 451, for the tax return see, AR 449-51).

4. On May 17, 2001, the Agency's End of Year Payment Eligibility Review Team evaluated Plaintiff's farming operation for the 1999 crop year. The selection was made by the Hitchcock County FSA Committee ("County Committee") pursuant to the Agency handbook (1-PL, Rev. 1, Paragraph 652D). The review team was comprised of Agency County Executive Directors outside of Hitchcock County, Nebraska. (AR 1077- 1078).

5. Following the End of Year Review, the County Committee considered the review team's summary of findings and notified Plaintiff by letter dated July 9, 2001, that for crop year 1999, his contributions were not commensurate with his claimed share of the operation. Therefore, Plaintiff was "not actively engaged in farming" and based on other findings, the County Committee determined that for crop year 1999, Black Hawk Land & Cattle Co., Travis Barger, Plaintiff, William M. Barger and RanDee Barger would be combined as "one person" for payment limitations purposes. (AR 193-199).

6

6. The following basis was used by the County Committee in determining required commensurate share:

- Capital contribution, which is the value of total capital necessary to conduct the farming operation: $70/acre for NI Wheat $120/acre for IR Corn $75/acre NI Sunflowers $100/acre for IR Soybeans

- Land contribution, which is the total rental value of the land necessary to conduct the farming operation: $100/acre Irrigated Land $30/acre Nonirrigated Land

- Equipment contribution, which is the total rental value of the equipment necessary to conduct the farming operation: Neb Guides Custom Farm Rates less 25% for labor and fuel

- Labor contribution:
  | | |
  |---|---|
  | 6 operations per crop @ 3 days (14 hour days) | = 252 hours |
  | Equal amount of prep time | = 252 hours |
  | 1 hour/day irrigation time x 90 days | = 90 hours |
  | Total Labor Required | 594 hours |

- Management contribution: 10% of Gross Sales = $11,120

The County Committee made the following comparison of the required contributions to those contributions actually provided:

| CONTRIBUTION | REQUIRED | PROVIDED |
|---|---|---|
| Capital | $36,500 | $36,500* |
| Land | 26,560 | 26,560 |
| Equipment | 22,000 | 13,200 |
| Labor | 5,940 | 832 |
| Management | 11,120 | 8,340 |
| TOTAL | $102,120 | $85,432 |

As a result of this determination, Plaintiff was required to refund 1999 payments earned as a result of the previous "actively engaged in

7

farming" determination. The payments to be refunded included 1999 Production Flexibility Contract payments, 1999 Market Loss Assistance payments, 1999 Loan Deficiency Payments and 1999 Market Gains received as a result of loan repayments at the Posted County Price. The total amount due as of July 9, 2001, was $41,876.67 plus interest thereafter. (AR 193-199).

7. Plaintiff requested a redetermination of the County Committee's decision and the opportunity for a rehearing. Following the rehearing, the County Committee notified Plaintiff by letter dated November 9, 2001, of their decision to uphold their earlier determination. The County Committee slightly modified their findings regarding Plaintiff's contributions to the operation and compared the adjusted required contributions to the adjusted provided contributions:

| CONTRIBUTION | REQUIRED | PROVIDED |
|---|---|---|
| Capital | $36,500 | $36,500 |
| Land | 26,560 | 26,560 |
| Equipment | 22,000 | 13,200 |
| Labor | 5,940 | 2,970 |
| Management | 11,120 | 11,120 |
| TOTAL | $102,120 | $90,350 |

The table was used to illustrate Plaintiff's commensurate shares, which factor the contributions provided of $90,350 divided by the required contributions of $102,120 which results in 88% of the inputs provided by Plaintiff. The County Committee also determined that based on the information provided by Plaintiff, Jacob Barger and Travis Barger, the County Committee could not determine separate and distinct interest in the land or crop involved, separate responsibility for their interest, nor separate funds or accounts for these interests. Therefore, the County Committee determined that for 1999 Plaintiff, Black Hawk, Travis Barger, William M. Barger and RanDee Barger would be combined as "one person" for payment limitations purposes.

8

As a result, Plaintiff was required to refund 1999 payments earned as set forth previously in the July 9, 2001, demand for payment. (AR 159-164).

8. Plaintiff then appealed to the NAD Hearing Officer and an evidentiary hearing was held on February 13, 2002, in Lincoln, Nebraska, pursuant to the provisions of 7 U.S.C. §§ 6991-7002. The NAD Hearing Officer determined the Agency did err in the above decision in the matter of "actively engaged in farming for 1999" but found the Agency did not err in the above decision on the "separate person" test. (AR 1360-1371).

9. Both parties then appealed the Hearing Officer's determination to the NAD Director and in an opinion (Director Review Determination) dated May 29, 2002, the NAD Director determined the Hearing Officer's decision was not consistent with the laws and regulations of the Agency and with the generally applicable interpretations of such laws and regulations in that the evidence supports the Agency's determination that Plaintiff was not "actively engaged in farming" in 1999. The Hearing Officer's determination that Plaintiff was "actively engaged in farming" in 1999 was reversed. The NAD Director upheld the Hearing Officer's determination that Plaintiff and third parties must be combined as "one person" for the 1999 crop year. The NAD Director's decision concluded the administrative appeal of this case. (AR 1355-1359).

10. Plaintiff filed this district court action seeking judicial review of the final agency decision (Filing 1).

(Filing 44, at 6-10).

Other material facts cited by Plaintiff include the following:

• The FSA's handbook, "1-PL", provides guidance for the County Committee in conducting an end-of-year review but is not promulgated under the APA. (Complaint ¶ 13, Answer ¶ 13).

9

- Plaintiff requested the NAD to issue subpoenas duces tecum of witnesses and documents prior to the hearing held with the NAD Hearing Officer. (AR 001032- 001035), which NAD refused to do (AR 001030-001031).

- FSA's determination that Black Hawk Land and Cattle Corp., Travis Barger and Plaintiff are not separate and distinct for payment limitation purposes, and should be combined as one "entity", does not result in any violations of any FSA payment regulations, since none of the payment limits are exceeded. NAD's affirmation that Plaintiff is not separate and distinct does not result in any violations by Plaintiff of the applicable payment limitation regulations. (Complaint ¶ 32, Answer ¶ 32).

- The NAD Director required Plaintiff to provide at least $22,000 of equipment for his farm. (AR 001358). The Hearing Officer found Plaintiff was required to provide at least $15,934 of equipment. (AR 001363, 001366). The NAD Director's $22,000 value is the same value the Review Team and County Committee used. (AR 001067, 001356). The County Committee relied upon the 2000 Nebraska Farm Custom Rates for this value, not the 1998 Nebraska Farm Custom Rates that Defendant supplied with the administrative record to Plaintiff. (AR 000323, 001400). Defendant attempted to have the 2000 Neb. Rates placed into the administrative record at the NAD Hearing. (Mid-point of Hearing Tape 3 of 5, NAD hearing, Side A). The Hearing Officer refused to allow the 2000 Neb. Rates into the record. (Id.)

- The Hearing Officer's $15,934 value is based upon $5,000 of irrigation equipment and $10,934 of farming machinery required for Plaintiff's farm. (AR 001363, 001365). The Hearing Officer based his $10,934 farm machinery value upon the calculations of Plaintiff's expert, said calculations being based upon the 1998 Neb. Rates. (AR 001318-001319 (Ex. BBB), 001363, 001365). The NAD Director and Hearing Officer both required $5,000 of irrigation equipment.

- The NAD Director and Hearing Officer both found Plaintiff provided $8,168 of direct cash payments to Black Hawk for Black Hawk's farm equipment in 1999. (AR 001357, 001363-001364.) Both found Plaintiff provided $5,000 of irrigation equipment. (Id.) This totals the $13,200 of provided equipment contributions the NAD Director found. (Id.)

10

- The Hearing Officer found Plaintiff provided $1,800 of corn stalks for Black Hawk's cattle to graze upon. (AR 000115, 001330 and 001364). The NAD Director also found Plaintiff had provided Black Hawk these corn stalks, but did not include their value in his provided equipment calculations. (AR 001357, ¶ 7).

- The Hearing Officer found that Black Hawk sold $3,027 of Plaintiff's wheat, but Black Hawk kept the wheat proceeds to apply to equipment expenses Plaintiff owed Black Hawk. (AR 001363- 001364). Plaintiff admitted that the $3,027 of wheat proceeds Black Hawk received from Plaintiff was not enough to pay all of Black Hawk's repairs in 1999. (AR 000248). The NAD Director stated that Plaintiff sold wheat in Black Hawk's name. (AR 001357, ¶ 7). The NAD Director relied upon this "wheat sale" factual finding for his separate and distinct determination, but did not include the wheat value in his provided equipment calculations. (AR 001357, ¶ 7).

- The Hearing Officer found that Plaintiff provided $500 of legal work to Black Hawk applicable to 1999 expenses. (AR 000102, 000488-000489, 000498-000499, 001364, 001366). The NAD Director stated that Plaintiff performed legal work for Black Hawk to offset equipment lease expenses, but did not include the legal work in his provided equipment calculations. (AR 001358).

- The NAD Director and Review Team found 594 hours of required labor were necessary for Plaintiff's farm. (AR 001356). The Hearing Officer found 444 hours of required labor were necessary. (AR 001366). The Director and Hearing Officer agreed  labor should be valued at $10/hour. (Id.)

- The Hearing Officer and Director both believed it would take 90 hours of time to perform irrigation on Plaintiff's farm. (Id.) The Hearing Officer found that Plaintiff's expert provided a credible analysis of 290 hours of field work and 64 hours of preparation time. (AR 001366). The Hearing Officer found that Defendant's identical 252 hours for field operations and 252 hours for preparation time were arbitrary. (Id.)

- The NAD Director found Plaintiff provided 50% of the 594 hours of required labor necessary for Plaintiff's farm, which is 297 hours. (AR 001356). The

11

Hearing Officer found Plaintiff provided 536 hours of the required 444 hours. (AR 001366-001367).

- The Hearing Officer determined that Plaintiff provided 360 hours while at the farm from mid-April to mid-June 1999, and Plaintiff provided 11 weekends for 176 hours, totaling 444 total hours. (AR 0001364, 0001367, 000343). The Hearing Officer could not determine how Defendant arrived at the provided labor value of 297 hours. (AR 0001366).

- Both the NAD Director and the Hearing Officer found Plaintiff provided legal work to Bill Barger in exchange for labor Bill Barger did on Plaintiff's farm. (AR 001358, 001364 ¶ 7, 001367). Both relied upon this factual finding to find Plaintiff was not separate and distinct from his other family members. (Id.) Neither the NAD Director nor the Hearing Officer gave Plaintiff any provided labor value for this legal work. Plaintiff provided the County Committee documents describing the hours of legal work, its value and provided copies of the legal documents prepared. (AR 000106, 000117, 000345, 000544-000564, 000578-000582).

(See Filing 42, at 7-14.)[5]


## III. DISCUSSION


Basically, it is Plaintiff's contention that the NAD Director was required to affirm the hearing officer's determination that Plaintiff was actively engaged in farming; in particular, Plaintiff contends that the record does not support the NAD Director's rejection of the hearing officer's findings regarding Plaintiff's required and provided contributions of equipment and labor. Plaintiff also argues that the NAD Director failed to give him credit for legal work that he performed for his father in exchange for farm labor, and he claims as a matter of law that "in-kind" payments are required to be included in "commensurate share" calculations. Finally, Plaintiff claims that his constitutional rights were violated.

---

[5] Minor editing has been made to the form of some statements.

The NAD Director's determination may be reversed only if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law," or if it is based on findings of fact that are "unsupported by substantial evidence." 5 U.S.C. § 706(2)(A), (E). "Substantial evidence is less than a preponderance, but enough so that a reasonable mind might find it adequate to support the conclusion." Robinson v. Sullivan, 956 F.2d 836, 838 (8th Cir.1992). When reviewing an agency decision, substantial deference must be accorded to the agency's interpretation of the statutes and regulations it administers. Siebrasse v. United States Dept. of Agriculture, 418 F.3d 847, 851 (8th Cir. 2005). The agency's interpretation of its own regulation must be upheld unless it violates the Constitution or a federal statute, or unless the interpretation is "plainly erroneous or inconsistent with the regulation." Coalition For Fair and Equitable Regulation of Docks on Lake of the Ozarks v. F.E.R.C., 297 F.3d 771, 778 (8th Cir. 2002) (quoting Univ. of Iowa Hospitals and Clinics v. Shalala, 180 F.3d 943, 950-51 (8th Cir.1999)). However, constitutional questions, such as Plaintiff's equal protection and due process claims, are reviewed de novo. Id. (citing Escudero-Corona v. INS, 244 F.3d 608, 614 (8th Cir.2001)).

## A.  Defendant's Motion to Strike

As a preliminary matter, I take up Defendant's motion to strike all evidence that has been filed by Plaintiff. That evidence consists of two affidavits by Plaintiff with attached documents.

In the first affidavit, Plaintiff states that he worked for the Nebraska Attorney General's office from July 1999 until May 2004, and that although he has been required to sell a portion of his farm to avoid foreclosure, he expects to continue farming. Plaintiff also attempts to authenticate (a) a letter that the USDA State Executive Director sent to United States Senator Ben Nelson on March 10, 2003, responding to an inquiry from Plaintiff regarding the 1999 farming operations of Steve Fries and Travis Fries, (b) a statistical "NAD Director Decision Chart" prepared

13

by counsel in a civil case filed in Colorado, (c) answers to interrogatories by the USDA Secretary in the Colorado case, and (d) two statistical documents also related to the Colorado case pertaining to "Review Determinations" in 1997 and 1998. Plaintiff's affidavit merely recites that the attached documents "are true and correct copies." There is no indication that Plaintiff has any personal knowledge concerning the documents that would permit him to describe what they are.[6] The statistical information contained in documents purportedly prepared in connection with the Colorado case are also hearsay and completely lacking in foundation. Only exhibits that are admissible in evidence may be considered by the court. See Fed. R. Civ. P. 56(e); NECivR 7.1(a)(2)(C) and 56.1. Statements made by Plaintiff concerning his past and future employment are irrelevant to his constitutional claims, and cannot be considered in connection with his appeal of the NAD determination even if relevant. "The task of the reviewing court is to apply the appropriate APA standard of review, 5 U.S.C. § 706, to the agency decision based on the record the agency presents to the reviewing court." Florida Power & Light Co. v. Lorion, 470 U.S. 729, 743-44 (1985). See also Newton County Wildlife Assoc. v. Rogers, 141 F.3d 803, 807 (8th Cir.1998) (APA review of agency action is normally confined to the agency's administrative record). For these reasons, the affidavit and attachments will be ordered stricken.

In the second affidavit, Plaintiff states that he has repaid some of the amount claimed to be owing to the CCC, through offsets and otherwise, and he attaches copies of documents evidencing such payments. Plaintiff seeks restitution of these payments. See Prokop v. United States ex rel. U.S. Dept. of Agriculture, 91 F. Supp. 2d 1301, 1315 (D. Neb. 2000) (stating that a party may obtain monetary relief under the APA only where the judgment represents benefits or payments withheld as part

---

[6] Copies of the documents allegedly related to the Colorado case are also attached to Plaintiff's complaint, but their authenticity is not established through the pleadings. See Complaint (filing 1) ¶ 49, Answer (filing 11) ¶ 49.

14

of the agency determination, rather than consequential damages resulting from the agency action).  I will receive this supplemental evidence.

## B. Plaintiff's Appeal of NAD Determination

Plaintiff first complains that the NAD Director expressly relied upon fact findings that were made by "the Agency's review team."  (See AR 1356.)  Plaintiff argues that only the County Committee had authority to conduct hearings and make fact findings.  Despite the NAD Director's statement, it is undisputed that the County Committee made its own fact findings based upon recommendations made by the review team, and, in fact, that the County Committee adjusted some values after Plaintiff asked for a redetermination.  I find no merit to Plaintiff's argument.

Plaintiff next complains that the NAD Director failed to make an express finding that the hearing officer's determination was not supported by substantial evidence.  Plaintiff relies on 7 C.F.R. § 11.9(d)(1), which provides in part:

> The Director will conduct a review of the determination of the Hearing Officer using the agency record, the hearing record, the request for review, any responses submitted under paragraph (c) of this section, and such other arguments or information as may be accepted by the Director, in order to determine whether the decision of the Hearing Officer is supported by substantial evidence.

This regulation does not limit the NAD Director's reviewing authority.  While the hearing officer's decision must be supported by substantial evidence in order to be upheld on appeal, see 7 U.S.C. § 706(2)(E), it is not entitled to any deference by the NAD Director, except, perhaps, with respect to credibility assessments where the hearing officer had the opportunity to observe the witness testify.  The statute that authorizes the NAD Director to uphold, modify, or reverse a hearing officer's determination, 7 U.S.C. § 6998, does not impose a "substantial evidence" standard of review.

15

Turning, then, to Plaintiff's principal argument on appeal, I agree that not all of the fact findings that were made by the County Committee and adopted by the NAD Director are supported by substantial evidence. First, it is undisputed that the required equipment contribution of $22,000 was based on the 2000 Nebraska Farm Custom Rates, not the 1998 rates that are contained in the administrative record.[7] Defendant claims that "the value differences between the 1998 and 2000 editions [of the Nebraska Farm Guide] are negligible," (filing 46 at 6), but I have no evidence of this fact. Indeed, the evidence shows that the Hearing Officer's equipment figure was $6,000 less, based on testimony of Plaintiff's expert using the 1998 rates.[8]   Second, there is no evidence in the administrative record to support the NAD Director's determination that 594 hours of labor were required, as opposed to the 444 hours found by the hearing officer (a difference of $1,500). Third, there is no explanation as to why the NAD Director gave no credit to Plaintiff for equipment contributions in connection with Plaintiff providing Black Hawk with $1,800 worth of corn stalks and $3,027 in wheat sale proceeds, as found by the hearing officer.[9]   Fourth, there is no evidence in the administrative record to support the NAD Director's finding that Plaintiff provided only one-half of the required labor.

Plaintiff also argues that the NAD Director failed to follow USDA regulations by refusing to credit Plaintiff for "in-kind" payments for labor. Plaintiff claims that he performed approximately $4,500 worth of legal work for his father in exchange

---

[7] The FSA argued that the $22,000 figure was consistent with equipment repair records that were contained in the record, but the FSA Director did not seize upon this argument.

[8] The substantial difference may be attributable to other factors, however.

[9] The hearing officer also found that Plaintiff contributed $500 in legal services to Black Hawk that  could be applied to equipment, but the NAD Director concluded that Plaintiff had failed to establish this fact, stating that Plaintiff did not have a log or record of billable hours to support his claim.  (AR 1358)

16

for his father working on the farm.  The NAD Director found that Plaintiff's father planted Plaintiff's corn in 1999 and did most of the irrigation, but that Plaintiff had no records to support his claim for traded legal work and his 1999 tax return did not show any hired labor payments.  (AR 1357-58)  The hearing officer made similar, but more detailed findings.  (AR 1364, 1367)  I find nothing to indicate that the NAD Director or hearing officer construed the USDA regulations to prohibit "in-kind" payments for labor.  Plaintiff's request for declaratory or injunctive relief on this non-issue is also denied.

To the extent Plaintiff is challenging the NAD Director's conclusion that the claim for "in-kind" payments was not supported by sufficient evidence, I reject the claim.  Plaintiff provided only conclusory testimony that he performed $4,500 worth of legal work for his father, and as documentation for the claim provided only copies of various pleadings, briefs, and correspondence, only a few of which documents were even signed by Plaintiff or dated in 1999.

Because the NAD Director's determination is not supported by the record, I will remand the matter for further proceedings but will not order restitution.

### D.  Plaintiff's Constitutional Claims

Finally, I consider Plaintiff's claims that he was denied equal protection and substantive due process.  Plaintiff is not a member of a protected class, but he claims that the NAD Director's determination is irrational (because the Frieses allegedly were treated differently) and the result of institutional bias against farmers (as allegedly demonstrated by the excluded documents pertaining to the Colorado case).  Suffice it to say that Plaintiff has not made his case.[10]

---

[10]  Plaintiff also argues that the "1-PL" handbook, which is not in evidence, is unconstitutionally vague.  I need not decide this issue.

17

# IV.  CONCLUSION

Because certain fact findings made by the NAD Director are not supported by substantial evidence, remand is required.  See Mages v. Johanns, 431 F.3d 1132, 1146 (8th Cir. 2005) ("[A] reviewing court may not uphold an agency decision based on reasons not articulated by the agency itself in its decision. . ..  A court must consider the agency's rationale for its decision, and if that rationale is inadequate or improper the court must reverse and remand for the agency to consider whether to pursue a new rationale for its decision or perhaps to change its decision.") (quoting Mayo v. Schiltgen, 921 F.2d 177, 179 (8th Cir.1990)).  Specifically, but without limitation, on remand Defendant shall make findings of fact and conclusions of law thoroughly explaining proper "commensurate share" calculations for crop year 1999 of: (1) Plaintiff's required equipment contribution, with appropriate references to the 1998 or 2000 Nebraska Farm Guide, as applicable, or other relevant sources; (2) Plaintiff's required labor contribution, also with appropriate source references; (3) Plaintiff's provided equipment contribution, including a discussion of the corn stalks and wheat sale proceeds that Black Hawk allegedly received; and (4) Plaintiff's provided labor contribution.

Accordingly,

IT IS ORDERED that:

1.  Defendant's motion to strike (filing 45) is granted except with respect to Plaintiff's second affidavit and attached exhibits (filing 41, parts 5 and 6), as to which the motion is denied.

2.  The parties' motions for summary judgment (filings 41, 43) are each granted in part and denied in part, as provided herein, and judgment shall be entered by separate document, generally providing that the

NAD's determination is reversed and the matter is remanded to Defendant for further proceedings consistent with this opinion.

March 13, 2006.                    BY THE COURT:

                                   s/ *Richard G. Kopf*
                                   United States District Judge

19